## S10A1318. THE STATE v. GLEATON et al.

(703 SE2d 642)

HINES, Justice.

This is an appeal by the State from the grant of the joint motion of defendants Maurice Gleaton and Antonio Clark to bar their trial due to the violation of the constitutional right to a speedy trial. See OCGA § 5-7-1 (a) (1).[1] For the reasons that follow, we affirm.

The State and Gleaton and Clark stipulated to the following before the trial court. On August 7, 2005, Kenneth Kemp was shot and killed at an apartment complex in Fulton County. Through the interviews of three witnesses, the police developed Gleaton and Clark as suspects in Kemp's murder. Although there were many other people near victim Kemp when the police arrived, no one else admitted to having any knowledge of the murder. On September 8, 2005, arrest warrants were issued for Gleaton and Clark, and they were arrested within a month of the issuance of the warrants.

Shortly after the arrests, a probable cause hearing was held and within days of that hearing, two of the three State's witnesses recanted the statements they had provided to the police. The third witness left Georgia shortly after Kemp's shooting, and when he was

---

[1] OCGA § 5-7-1 provides in pertinent part:

(a) An appeal may be taken by and on behalf of the State of Georgia from the superior courts, state courts, City Court of Atlanta, and juvenile courts and such other courts from which a direct appeal is authorized to the Court of Appeals of Georgia and the Supreme Court of Georgia in criminal cases and adjudication of delinquency cases in the following instances:

(1) From an order, decision, or judgment setting aside or dismissing any indictment, accusation, or petition alleging that a child has committed a delinquent act or any count thereof;

(2) From an order, decision, or judgment arresting judgment of conviction or adjudication of delinquency upon legal grounds;

(3) From an order, decision, or judgment sustaining a plea or motion in bar, when the defendant has not been put in jeopardy;

(4) From an order, decision, or judgment suppressing or excluding evidence illegally seized or excluding the results of any test for alcohol or drugs in the case of motions made and ruled upon prior to the impaneling of a jury or the defendant being put in jeopardy, whichever occurs first;

(5) From an order, decision, or judgment of a court where the court does not have jurisdiction or the order is otherwise void under the Constitution or laws of this state;

(6) From an order, decision, or judgment of a superior court transferring a case to the juvenile court pursuant to subparagraph (b) (2) (B) of Code Section 15-11-28;

(7) From an order, decision, or judgment of a superior court granting a motion for new trial or an extraordinary motion for new trial;

(8) From an order, decision, or judgment denying a motion by the state to recuse or disqualify a judge made and ruled upon prior to the defendant being put in jeopardy; or

(9) From an order, decision, or judgment issued pursuant to subsection (c) of Code Section 17-10-6.2.

contacted by the office of the district attorney, he expressed unwillingness to further assist in the prosecution of Gleaton and Clark. The victim, Kemp, had been named as the primary suspect in a murder that occurred the day before his death, and he was armed with a gun at the time of his death. By November 3, 2005, both Gleaton and Clark had been released on bond, and due to the recantations and uncooperativeness of the witnesses, the district attorney did not, in the ordinary course of business, present the case to the grand jury for indictment.

For more than three years, from January 2006 to August 2009, neither the police nor the district attorney's office made any further investigation or took any action of any kind regarding the case. Although there were no changes whatsoever in the facts of the case, on August 4, 2009, the district attorney sought and obtained an indictment charging both Gleaton and Clark with malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony.

On December 8, 2009, counsel for Gleaton filed the present motion to bar trial due to a violation of his right to a speedy trial; the motion was adopted by Clark prior to a hearing in the matter. At the hearing, there was testimony and photographic evidence that the apartment complex at which Kemp's murder occurred had been condemned and closed. Following the hearing, the trial court granted the motion after applying the four-part balancing test of *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

A trial court's ruling on a motion to bar a defendant's trial based upon an alleged violation of the right to a speedy trial found in the Federal and State Constitutions is to be reviewed under the analysis found in *Barker v. Wingo*. *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008); *State v. White*, 282 Ga. 859, 861 (2) (655 SE2d 575) (2008).

> In *Barker v. Wingo* [. . .], the Supreme Court of the United States identified four factors to be considered by a court in determining whether an accused's constitutional right to a speedy trial had been violated . . . (a) the length of the delay, (b) the reason for the delay, (c) the defendant's assertion of his right, and (d) the prejudice to the defendant. The Supreme Court further stated that it regarded none of the factors as either a necessary or sufficient condition to a finding of a deprivation of the right of speedy trial but rather that the factors should be considered together in a balancing test of the conduct of the prosecution and the defendant.

*State v. Lattimore*, 287 Ga. 505 (696 SE2d 613) (2010), quoting *State v. Redding*, 274 Ga. 831, 831-832 (561 SE2d 79) (2002) (citations omitted). The issue before this Court is whether the trial court abused its broad discretion in ruling that Gleaton's and Clark's speedy trial rights were violated. *State v. Lattimore*, supra at 506; *Bryant v. State*, 265 Ga. App. 234, 235 (593 SE2d 705) (2004).

As to the first factor, the length of the delay, it is undisputed that the length of the delay for both defendants is slightly less than four years from arrest until the State secured an indictment and just over four years from arrest until the motion to bar trial was filed. As the trial court correctly determined, the extreme length of delay in this case is presumptively prejudicial, and therefore, an analysis of the remaining *Barker v. Wingo* factors is triggered. *Layman v. State*, 284 Ga. 83 (663 SE2d 169) (2008).

The next factor to be considered is the reason for the delay, and in reviewing this factor, the trial court found that the delay was attributable to negligence by the State. It found specifically that both the police and the district attorney's office did no investigation in the case for the entire almost-four-year period between arrest and indictment, and that the only reason given to explain the lack of investigation or activity in the case is the State's obvious lack of desire to prosecute a case that was severely lacking in evidence. And, the State does not contest this; the State focuses its challenge on the remaining *Barker v. Wingo* factors.

As to the assertion of the right to a speedy trial, the trial court declined to fatally fault defendants for not having pursued their motion prior to indictment because it recognized that "as a practical matter a [d]efendant on bond is highly unlikely to come forward and demand an indictment be returned against him or that the case be brought before a court for any reason." Additionally, the trial court found that once the indictment was returned, the motion to bar trial was timely filed, and specifically, that it was filed within all appropriate time periods set forth in the court's scheduling order for discovery and motions; therefore, such timely filing mitigated any pre-indictment failure to assert the right to a speedy trial.

The State maintains that the trial court erred in failing to weigh heavily against the defendants their pre-indictment failure to assert the right to a speedy trial in contravention of "binding precedent," specifically *State v. Hight*, 156 Ga. App. 246 (274 SE2d 638) (1980), which cited *Haisman v. State*, 242 Ga. 896, 898 (252 SE2d 397) (1979). It is certainly true that in *Haisman,* this Court weighed the defendant's pre-indictment silence against her. But, unlike the present case, *Haisman* involved a total delay of 22 months, the reason for the pre-indictment delay period was the State's legitimate need for further investigation of the crimes at issue, and there was

no indication that Haisman was out on bond following her arrest. In any event, the fact of any pre-indictment inaction was not determinative; this Court made plain that it was but one consideration in the balancing of the *Barker v. Wingo* factors. Id. at 899 (2).

Also, the trial court was authorized to assess mitigating circumstances in the defendants' failure to file any demand for trial between arrest and indictment, including the fact that the motion to bar trial was timely filed within the parameters of the trial court's scheduling order. *State v. White*, 282 Ga. 859, 862 (2) (c) (655 SE2d 575) (2008).

As to the State's assertion that the trial court failed to recognize that each defendant's revealed preference was to wait it out and hope for the best, amounting to what it characterizes as "acquiescence," it is not supported by the evidence of record. Indeed, as already noted, the State stipulated to facts which result in the reasonable inference that the delay in this case was caused by the State's unwillingness to pursue what could at best be characterized as a weak case; therefore, there was little for the defendants to "wait out." Furthermore, any failure on the part of the defendants to file a demand for speedy trial does not affect the propriety of the present motion to bar trial because the filing of a speedy trial demand is not a prerequisite for a plea in bar for failure to have a speedy trial on constitutional grounds. *State v. White*, supra at 862 (2) (c).

As noted by the trial court, in regard to the final factor, prejudice, *Barker v. Wingo*

identified three interests which the speedy trial right was designed to protect, the last being the most important: (a) to prevent oppressive pretrial incarceration; (b) to minimize anxiety and concern of the accused; and (c) to limit the possibility that the defense will be impaired.

*Williams v. State*, 279 Ga. 106, 109 (1) (d) (610 SE2d 32) (2005) (citations and punctuation omitted). The length of the delay is then considered a second time by assessing it as part of the prejudice prong of the *Barker* analysis, with "the presumption that pretrial delay has prejudiced the accused intensifying over time." Id. In this case, the trial court found that neither Gleaton nor Clark suffered from oppressive pre-trial incarceration because both were released on bond approximately a month after their arrests, and that there was no evidence that either suffered from anxiety and concern beyond that faced by all accused defendants. However, the court found that as to the most important aspect of the analysis, the delay in indictment resulted in impairment and prejudice to the defense. It explained that condemnation of the apartment complex, which was

the crime scene, made it impossible for the defense to investigate the case in any meaningful manner, and that this "actual" prejudice was due entirely to the State's failure to have returned an indictment until nearly four years after the arrests of Gleaton and Clark.

The State contends that the trial court erred in finding actual prejudice from the absence of unidentified witnesses, and in weighing such "phantom prejudice" in defendants' favor because the State's eyewitnesses recanted after being interviewed by counsel, and as there is no alibi or claim of justification, the trial court erred in finding that the defendants' defense was impaired by the delay.

But, as the trial court expressly found, just as the prosecution was stymied by the admitted effective obscuration of the crime scene, so was the defense; it was prevented from obtaining any forensic or other evidence the crime scene might hold and was faced with the practical impossibility of locating other viable witnesses to the murder by virtue of their residence or presence at the now condemned property. The prejudice to any defense was far from constructive or "phantom." And, there is no merit to the State's seeking to charge defendants with a fatal lack of due diligence because they did not previously attempt to obtain a list of tenants from the management of the apartment complex prior to its condemnation. They should not be sanctioned for failing to seek witnesses or evidence to defend against crimes for which they had not been formally charged.

Simply, the stipulated facts show that the State effectively abandoned the case after the witnesses recanted. Under these circumstances, this Court cannot conclude that the trial court abused its discretion in balancing the *Barker v. Wingo* factors and ultimately in finding in favor of defendants Gleaton and Clark, and therefore, in granting their motion to bar trial. *State v. Lattimore*, supra at 506.

*Judgment affirmed. All the Justices concur, except Benham, Melton, and Nahmias, JJ., who dissent.*


MELTON, Justice, dissenting.

Because evidence does not support the trial court's conclusion that the defense was prejudiced here, I respectfully dissent from the majority's erroneous conclusion that the trial court did not abuse its discretion in granting the defendants' motion to bar their trial.

As the trial court and the majority correctly conclude, neither defendant suffered from oppressive pre-trial incarceration or excessive anxiety. See, e.g., *Bowling v. State*, 285 Ga. 43 (1) (d) (673 SE2d 194) (2009). However, the majority and the trial court claim that the condemnation of the apartment complex where the crime took place "made it impossible for the defense to investigate the case in any

meaningful manner, and that this 'actual' prejudice was due entirely to the State's failure to have returned an indictment until nearly four years after the arrests of Gleaton and Clark." Maj. Op. at 377. This statement is not supported by the record. Indeed, the defendants were arrested shortly after September 8, 2005, and there was nothing preventing the defense from interviewing witnesses and beginning the preparation of their defense at this time.[2] Nor is there any evidence of record as to exactly when the apartment complex was "condemned," leaving the majority only to speculate as to when any "meaningful" investigation would have been cut off, and to speculate as to how the State's delay would have had anything to do with the timing of the defense initiating its own investigation.

In any event, to the extent that the defense conducted any witness interviews and had information in 2005 on the witnesses that it would need, it is of little significance that the witnesses may no longer have been living at the apartment complex four years later.

> The possibilities that "memories will dim, witnesses become inaccessible, and evidence be lost" are inherent in any extended delay, and, "these possibilities are not in themselves enough to demonstrate that the appellant cannot receive a fair trial." [*United States v.*] *Marion*, 404 U. S. [307,] 326 [(92 SC 455, 30 LE2d 468) (1971)]; *State v. Madden*, 242 Ga. 637, 638 (250 SE2d 484) (1978).

(Punctuation omitted.) *Wooten v. State*, 262 Ga. 876, 880 (3) (426 SE2d 852) (1993). The defendants here have not pointed to any specific witnesses who are no longer available and who the defense could not have located back in 2005 but for the State's negligent delay, nor have they shown any prejudice that would not have resulted from the natural passage of time. Accordingly, this Court "cannot find that the prejudice alleged by the [defendants] is sufficient to require dismissal of the indictment." Id.

Indeed, the deteriorating condition of the apartment complex over time has nothing to do with impeding an investigation by the defense that could have, and should have, taken place in 2005 while the case was still fresh and being investigated by the police. See *Bowling*, supra, 285 Ga. at 46-47 (1) (d) (defendant could not show prejudice to defense from destruction of van where murder took place where evidence from van was made available to defense and

---

[2] In this regard, the State had no problem locating and interviewing witnesses during the first few weeks of the investigation. There is no indication in the record that the defendants were prevented from interviewing these same witnesses or investigating additional witnesses to prepare their defense following their arrest.

defendant's brother never claimed van after it had been impounded). Nor does the delay have anything to do with impeding the defense from launching an investigation at any time over the course of the next few years while the apartment complex ostensibly continued to deteriorate. In short,

> [a]lthough greater pretrial delays simultaneously increase the degree of prejudice presumed and decrease the expectation that the defendant can demonstrate tangible prejudice to his or her ability to present a defense, [the defendants here] made no specific showing as to how [their] defense was impaired *as a result of the . . . delay*.

(Citation and punctuation omitted; emphasis supplied). *Williams v. State*, 279 Ga. 106, 110 (1) (d) (610 SE2d 32) (2005). Accordingly, the trial court here "abused its discretion in granting [the defendants'] motion to dismiss the indictment" (*State v. Stallworth*, 293 Ga. App. 368, 370 (2) (667 SE2d 147) (2008)), and I would reverse the trial court's decision. Id.

I am authorized to state that Justice Benham and Justice Nahmias join in this dissent.

NAHMIAS, Justice, dissenting.

It is true that "[a] trial court's findings of fact and weighing of those facts in a speedy trial claim generally are reviewed under an abuse of discretion standard." *Williams v. State*, 277 Ga. 598, 601 (592 SE2d 848) (2004). See Maj. Op. at 374-375, 377 (citing *State v. Lattimore*, 287 Ga. 505, 506 (696 SE2d 613) (2010)). "However, where, as in this case, the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished." *Williams*, 277 Ga. at 601. As Justice Melton's dissenting opinion explains, the trial court's finding of actual prejudice is not supported by the record, and I note that the trial court's order characterized actual prejudice as "the most important factor in the *Barker v. Wingo*[, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972)] analysis."

Because of that clear and significant error, I believe that this Court should not affirm the trial court's judgment, and so I respectfully dissent. However, I cannot say that application of the *Barker v. Wingo* factors, without including the erroneous finding of actual prejudice, *requires* the judgment that Gleaton's speedy trial rights were not violated, as Justice Melton concludes. Instead, I would reverse and remand the case with direction to the trial court to exercise its discretion again after re-weighing the speedy trial factors without the erroneous factual finding. See *Williams*, 277 Ga. at 601

(remanding in part for reconsideration of a speedy trial claim due to a factual error in the trial court's initial order). See also *Lattimore*, 287 Ga. at 510 (Nahmias, J., dissenting).

DECIDED NOVEMBER 8, 2010 —
RECONSIDERATION DENIED DECEMBER 14, 2010.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettie-anne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*Tony L. Axam, Cinque M. Axam*, for appellees.