S12A1981. THE STATE v. BUCKNER.

(738 SE2d 65)

BLACKWELL, Justice.

In December 2007, Bobby Lavon Buckner was indicted in Chatham County for the kidnapping, molestation, and murder of 12-year-old Ashleigh Moore. Four years later, Buckner still had not been brought to trial, so he filed a motion to dismiss his indictment, arguing that he had been denied his constitutional right to a speedy trial. Following a hearing, the trial court concluded that Buckner had been denied his right to a speedy trial, and it reluctantly dismissed the indictment, acknowledging that the remedy of dismissal is a harsh one, but that it is the only available remedy for such a denial.[1] The State appeals from the dismissal of the indictment, contending that the trial court misapplied the principles set out in *Barker v. Wingo,* 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), and *Doggett v. United States,* 505 U. S. 647 (112 SC 2686, 120 LE2d 520) (1992), which guide a court in its

---

[1] About the harshness of the remedy, the trial court said:

This Court has struggled with the issues in this motion, not because of the clarity of the law or the undisputed facts of this case, but because the remedy for a violation of the Defendant's Sixth Amendment right [to a speedy trial] is so extreme. As best said by the United States Supreme Court, the consequence for the violation of a defendant's right to a speedy trial leads to the "unsatisfactorily severe remedy" of dismissal, which means "that a defendant who may be guilty of a serious crime will go free, without having been tried." Nonetheless, "it is the only possible remedy" allowed under the law.

(Citations and footnotes omitted).

consideration of whether a delay in bringing an accused to trial amounts to a denial of his right to a speedy trial.[2]

In Georgia, the application of these principles to the circumstances of a particular case is a task committed principally to the discretion of the trial courts, and it is settled law that our role as a court of review is a limited one.[3] See *State v. Porter*, 288 Ga. 524, 526 (2) (a) (705 SE2d 636) (2011). Under our precedents, we must accept the factual findings of the trial court unless they are clearly erroneous, id., and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion, even though we might have reached a different conclusion were the issue committed to our discretion. Id. at 533 (2) (e). In this case, the trial court entered a 36-page order, in which it carefully and thoroughly explained its reasons for concluding that Buckner had been denied his right to a speedy trial.[4] Upon our review, we cannot say that the trial court clearly erred in its assessment of the relevant facts, and we cannot say that its ultimate conclusion, which appears reasoned and reasonable, amounts to an abuse of discretion. Accordingly, we must affirm the judgment below.

1. On April 18, 2003, Ashleigh Moore disappeared from her home in Savannah, never again to be seen alive. Buckner, a convicted sex offender, was arrested the next day, after law enforcement officers

---

[2] The United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial," U. S. Const., Amend. VI, and the Georgia Constitution likewise guarantees that, "[i]n criminal cases, the defendant shall have a public and speedy trial . . . ." Ga. Const., Art. I, Sec. I, Par. XI (a). The principles set out in *Barker* and *Doggett* apply equally to a claimed denial of the right to a speedy trial under the United States Constitution and to a claimed denial of the same right under the Georgia Constitution. *Redd v. State*, 261 Ga. 300, 301, n.1 (404 SE2d 264) (1991).

[3] Nearly forty years ago, this Court recognized that the weighing of the relevant factors identified in *Barker* and *Doggett* is a matter committed to the discretion of trial judges, *Treadwell v. State*, 233 Ga. 468, 470 (211 SE2d 760) (1975), and since then, we have reaffirmed that principle in case after case. See, e.g., *State v. Johnson*, 291 Ga. 863, 865 (2) (734 SE2d 12) (2012); *Phan v. State*, 290 Ga. 588, 592 (1) (723 SE2d 876) (2012); *Wilkie v. State*, 290 Ga. 450, 451 (721 SE2d 830) (2012); *Higginbottom v. State*, 290 Ga. 198, 200 (1) (719 SE2d 482) (2011); *Rafi v. State*, 289 Ga. 716, 717 (2) (715 SE2d 113) (2011); *Fallen v. State*, 289 Ga. 247, 248 (710 SE2d 559) (2011); *Higginbottom v. State*, 288 Ga. 429, 430 (704 SE2d 786) (2011); *Brown v. State*, 287 Ga. 892, 894 (1) (700 SE2d 407) (2010); *Phan v. State*, 287 Ga. 697, 700, n.1 (699 SE2d 9) (2010); *State v. Lattimore*, 287 Ga. 505, 506 (696 SE2d 613) (2010); *Jakupovic v. State*, 287 Ga. 205, 206 (1) (695 SE2d 247) (2010); *Ruffin v. State*, 284 Ga. 52, 65 (3) (663 SE2d 189) (2008). We have characterized the discretion of the trial courts in this respect as "substantial," *State v. Pickett*, 288 Ga. 674, 679 (2) (d) (706 SE2d 561) (2011), and "broad." *State v. Gleaton*, 288 Ga. 373, 375 (703 SE2d 642) (2010). Given the longstanding commitment of the weighing of the *Barker-Doggett* factors to the discretion of the trial courts, we have explained that "[i]t is not the job of [an] appellate court . . . to weigh the *Barker[-Doggett]* factors in the first instance." *Pickett*, 288 Ga. at 679-680 (2) (d).

[4] The trial court attached to the order a detailed chronology of significant events in the prosecution, a chronology that spanned seven pages.

learned that he had been alone with Ashleigh and two other children, which amounted to a violation of the terms of his probation. Buckner later admitted a violation of his probation, and he also pled guilty to several sex crimes involving children other than Ashleigh, crimes for which he was sentenced to imprisonment for a term of twenty years.[5] Buckner was not charged for several years, however, with any crimes against Ashleigh.

In December 2007, a Chatham County grand jury indicted Buckner for the murder, kidnapping, and molestation of Ashleigh.[6] After several continuances, the case was set for the tenth time for trial on April 4, 2011, but on that date, the prosecuting attorneys announced for the first time that the State intended to seek the death penalty. In light of that announcement, the trial was continued yet again, the case was reassigned to another trial judge, and new lawyers appeared to represent Buckner, filing more than 140 motions in the months that followed. Then, on August 25, 2011, the prosecuting attorneys announced that the State would not seek the death penalty after all, and the trial was reset for February 2012. In December 2011, Buckner filed his motion to dismiss, and the trial court granted that motion in an order dated May 30, 2012, nearly four-and-a-half years after Buckner was indicted.

2. As we noted earlier, the principles that guide a court when it considers whether the delay in bringing an accused to trial amounts to a denial of his right to a speedy trial are set out in *Barker* and *Doggett*. Some delay is inevitable, of course, so a court first must consider whether the delay is long enough to raise a presumption of prejudice and to warrant a more searching judicial inquiry into the delay. See *Doggett*, 505 U. S. at 651-652 (II); see also *Barker*, 407 U. S. at 530-531 (IV); *State v. Johnson*, 291 Ga. 863, 864 (1) (734 SE2d 12) (2012); *State v. Pickett*, 288 Ga. 674, 675 (2) (a) (706 SE2d 561) (2011). The right to a speedy trial attaches at the time of arrest or formal accusation or indictment, whichever occurs first, and the courts measure the delay from the time the right attaches. *Scandrett v. State*, 279 Ga. 632, 633 (1) (a) (619 SE2d 603) (2005). A delay approaching one year is sufficient in most cases to raise a presumption of prejudice and to warrant a more searching inquiry. See

---

[5] More specifically, Buckner pled guilty to six counts of child molestation, three counts of enticing a child for indecent purposes, two counts of sexual exploitation of a minor, two counts of furnishing alcohol to a minor, and one count of statutory rape. In all, these crimes involved four children.

[6] That indictment eventually was quashed, and Buckner was indicted again for the same crimes in May 2009. Buckner apparently never was arraigned on either indictment, and he was indicted yet again in March 2011.

*Doggett,* 505 U. S. at 652 (II), n.1; but see *Barker,* 407 U. S. at 530-531 (IV) ("[T]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."). In this case, more than 53 months elapsed between the original indictment and the entry of the order granting the motion to dismiss. As the State acknowledges, the trial court did not abuse its discretion when it determined that this delay raises a presumption of prejudice. See *Ruffin v. State,* 284 Ga. 52, 55 (2) (a) (663 SE2d 189) (2008).

3. When a delay raises a presumption of prejudice, and a more searching inquiry is warranted, a court must consider "whether [the] delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett,* 505 U. S. at 651 (II); see also *Barker,* 407 U. S. at 530-533 (IV); *Johnson,* 291 Ga. at 864 (2); *Pickett,* 288 Ga. at 675 (2) (a). Of these factors, no one is dispositive. Instead, a court must weigh all four factors, along with any other relevant circumstances, in "a difficult and sensitive balancing process." *Barker,* 407 U. S. at 533 (IV); see also *Pickett,* 288 Ga. at 675 (2) (a). Weighing these factors, as we noted earlier, is committed to the substantial discretion of the trial court, and "its ultimate judgment is reviewed on appeal only for an abuse of that discretion." *State v. Porter,* 288 Ga. at 533. We now examine whether the trial court in this case abused its discretion in weighing the pertinent factors and concluding that Buckner was denied his right to a speedy trial.

(a) *The First Factor: Length of the Delay.* In its order of dismissal, the trial court correctly acknowledged that the delay that can be tolerated in a particular case depends to some extent on the complexity and seriousness of the charges in that case. See *Barker,* 407 U. S. at 530-531 (IV); *Rogers v. State,* 286 Ga. 387, 388 (688 SE2d 344) (2010). Although the crimes with which Buckner was charged were as serious as they come, the trial court found that the State essentially had completed its investigation of the case by the time Buckner was indicted, and it found that the case was no more complicated than most other cases involving such serious crimes. In light of these findings, none of which appear clearly erroneous, the trial court concluded that the 53-month delay in this case was "uncommonly long," and it weighed this factor against the State. The trial court properly considered the "peculiar circumstances" of this case, and we cannot say that its conclusion that the case was not prosecuted with the promptness customary in such cases was unreasonable. See *Jackson v. State,* 279 Ga. 449, 452 (3) (614 SE2d 781) (2005). Accordingly, we cannot say that the trial court abused its discretion when it

weighed the first factor against the State. See *Pickett*, 288 Ga. at 676 (2) (c) (1); *Ruffin*, 284 Ga. at 58-59 (2) (b) (i).

(b) *The Second Factor: Reasons for the Delay*. We next consider the findings of the trial court about the reasons for the delay. While "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," an unintentional delay, such as that caused by the mere negligence of the prosecuting attorneys or the overcrowded docket of the trial court, "should be weighted less heavily." *Barker*, 407 U. S. at 531 (IV); see also *Vermont v. Brillon*, 556 U. S. 81, 90 (II) (129 SC 1283, 173 LE2d 231) (2009). In this case, the trial court found that much of the delay was attributable to the negligent inaction of the prosecuting attorneys or to the reassignment of the case from one prosecuting attorney to another. The trial court also found that some delay was attributable to unknown circumstances about which the record is silent. The trial court correctly weighed these portions of the delay — which amounted, the trial court found, to approximately 30 months — benignly against the State. See *Pickett*, 288 Ga. at 676 (2) (c) (2) (trial court "correctly weighed [unintentional delay] against the State only benignly"); *Brannen v. State*, 274 Ga. 454, 455 (553 SE2d 813) (2001) ("Where no reason appears for a delay, we must treat the delay as caused by the negligence of the State in bringing the case to trial.") (citation and punctuation omitted). The trial court also found that the parties agreed to several continuances, and it properly weighed those portions of the delay — which, it found, amounted to about ten months — equally against both Buckner and the State. See *Bass v. State*, 275 Ga. App. 259, 260 (2) (620 SE2d 184) (2005). In addition, the trial court found that about three months of delay was occasioned by defense counsel submitting a notice of conflict, and it properly weighed that portion of the delay benignly against Buckner. See *Brewington v. State*, 288 Ga. 520, 523 (3) (b) (ii) (705 SE2d 660) (2011); see also *State v. Brown*, 315 Ga. App. 544, 548 (2) (b) (726 SE2d 500) (2012); compare *Sosniak v. State*, 292 Ga. 35, 42 (3) (734 SE2d 362) (2012) (trial court did not err when it concluded that defendant's repeated requests for continuances weighed "heavily" against him). We see no clear error in the findings about the reasons for these portions of the delay, and we see no abuse of discretion in the way in which the trial court weighed those reasons.

Besides the 30 months of delay that the trial court weighed benignly against the State, the trial court concluded that the delay occasioned by the announcement of the prosecuting attorneys that the State intended to seek the death penalty — a delay, the trial court found, of about ten months — also should be weighed against the State, although "more heavily." In support of this conclusion, the trial

court noted that the announcement "occurred late in an already significantly delayed case [and] was apparently altogether unnecessary." The trial court acknowledged that, "[w]hile the State is empowered with the discretion to seek the punishment it deems appropriate in a given case, the Court simply cannot ignore that the State opted not to exercise this discretion until the eve of trial in a case that had already been outstanding for forty months." In particular, the trial court expressed concern that the announcement about the death penalty was made "on the very date that the case was set to go to trial for the tenth time" and that the late decision to seek the death penalty evidently was not made upon the discovery of new evidence "or information equally notable, that would cause a reasonable prosecutor in a case to reconsider the issue of punishment, even late in the prosecution of a case." Instead, the trial court found that the prosecuting attorneys were aware, or should have been aware, of all of the evidence against Buckner long before they decided to seek the death penalty, and the trial court further found that the prosecuting attorneys also knew, or should have known, of any problems with the evidence that later led them to decide that the State would not seek the death penalty after all. The trial court concluded that the ten-month delay occasioned by the announcement of an intent to seek the death penalty "was the result of a deliberate decision by the State and something more than mere negligence."

We cannot say that the trial court clearly erred when it attributed an additional ten months of delay to the State for the late announcement of its intent to seek the death penalty. In its supplemental brief on appeal,[7] the State attempts to offer an excuse for its late announcement, noting that the case was reassigned to a new prosecuting attorney in December 2010, and explaining that, "after reading the [case] file, which included thousands of reports, records, statements and investigator notes, photographs and recordings, it was clear to [the new prosecuting attorney] that the State should seek the death penalty." The State says nothing, however, about whether the case file had been reviewed so carefully at any earlier point or whether it previously had considered the death penalty at all. The State's explanation for the significantly delayed decision to seek the death penalty fails to persuade us that the trial court was unreasonable in its assessment of the delay occasioned by that decision. The trial court appears to have thought that someone in the office of the prosecuting attorney ought to have carefully reviewed the case file long before December 2010, and that it should have occurred to

---

[7] Buckner has moved us to strike the State's supplemental brief. That motion is denied.

someone in that office long before March 2011 that the death penalty perhaps ought to be sought. Such thoughts are not unreasonable ones. After all, in a case like this one — involving a convicted sex offender accused of murdering, kidnapping, and sexually abusing a child — the idea that the death penalty perhaps might be warranted is hardly a novel one. See, e.g., *Heidler v. State*, 273 Ga. 54 (537 SE2d 44) (2000); *Pruitt v. State*, 270 Ga. 745 (514 SE2d 639) (1999); *Tyree v. State*, 262 Ga. 395 (418 SE2d 16) (1992); *Pruitt v. State*, 258 Ga. 583 (373 SE2d 192) (1988); *Parker v. State*, 256 Ga. 543 (350 SE2d 570) (1986). We cannot say that the trial court abused its considerable discretion when it determined to weigh the additional delay occasioned by the announcement about the death penalty against the State "more heavily" than delay occasioned by mere negligent inaction, even if some other judge might have weighed that delay more lightly.[8] See *Jackson v. State*, 272 Ga. 782, 784 (534 SE2d 796) (2000) ("While there is no evidence that this was a deliberate attempt to 'hamper the defense,' neither is it negligence which is 'relatively benign.' It is therefore weighted against the [S]tate.") (footnote omitted). As a result, we cannot conclude that the trial court clearly erred in its assessment of the facts relevant to the second factor, and we cannot say that the trial court abused its discretion when it determined that approximately 30 months of delay should be weighed benignly against the State and approximately ten months of additional delay should be weighed more heavily against the State.

(c) *The Third Factor: Assertion of the Right.* Though the State bears the burden to ensure that an accused is brought to trial promptly, "the accused bears some responsibility to invoke the speedy trial right and put the government on notice that he . . . would prefer to be tried as soon as possible." *Ruffin*, 284 Ga. at 62 (2) (b) (iii). Once the right to a speedy trial attaches, the accused must assert it with reasonable promptness, and "delay in doing so normally will be weighed against him." *Pickett*, 288 Ga. at 676 (2) (c) (3). That said, "[t]he accused is not required to demand a speedy trial at the first available opportunity," *Ruffin*, 284 Ga. at 62 (2) (b) (iii), only to

---

[8] We note that Buckner presented at least some evidence that might arguably support his contention that the prosecuting attorneys announced their decision to seek the death penalty to gain leverage in plea negotiations. The trial court found that the announcement "may have" been a strategic attempt to gain leverage and secure a plea, but the trial court did not make a definitive finding on this issue, nor was it required to do so. The trial court weighed the delay occasioned by the decision to seek the death penalty "more heavily" than if the delay had been caused by mere negligent inaction. The trial court did not say, however, that it weighed the delay as "heavily" as an intentional delay for the improper purpose of hindering the defense of the accused. See *Brillon*, 556 U. S. at 90 (II); see also *State v. Shirley*, 311 Ga. App. 141, 145 (3) (b) (714 SE2d 636) (2011).

demand it "in due course." *Doggett*, 505 U. S. at 651 (II). To assess whether the accused insisted "in due course" upon his right to a speedy trial "requires a close examination of the procedural history of the case with particular attention to the timing, form, and vigor of the accused's demands to be tried immediately." *Ruffin*, 284 Ga. at 63 (2) (b) (iii). And because delay often works to the defendant's advantage, see *Brillon*, 556 U. S. at 90 (II), the failure of the accused to assert his right in due course generally is accorded "strong evidentiary weight." *Marshall v. State*, 286 Ga. 446, 447 (1) (c) (689 SE2d 283) (2010) (citation and punctuation omitted).

In this case, Buckner did not assert his right to a speedy trial until almost four years after his indictment. And the trial court did not abuse its discretion when it concluded that this factor "weighs heavily against [Buckner]." See *Pickett*, 288 Ga. at 677 (2) (c) (3). The trial court also found, however, that Buckner's late assertion of his right to a speedy trial was "somewhat mitigated" by his repeated insistence that the State comply with its discovery obligations. We have acknowledged that the weight to be attributed to this factor may be mitigated in some cases, and whether the circumstances of a particular case warrant any mitigation is a question committed to the sound discretion of the trial court. See, e.g., *State v. Gleaton*, 288 Ga. 373, 376 (703 SE2d 642) (2010); *State v. White*, 282 Ga. 859, 862 (2) (c) (655 SE2d 575) (2008). One of the factors that a trial court may consider in this context is whether, during the time that discovery was not forthcoming from the State, the defendant "was insisting in the meantime that the State comply with its obligations to furnish discovery." *Brown*, 315 Ga. App. at 552 (2) (c) (citation omitted). Here, the trial court found that the State "consistently agreed to provide . . . requested and demanded items, but then regularly failed to do so, such that the Court had to repeatedly intervene and preside over the exchange of discovery."[9] The trial court also noted that, during this period, Buckner "repeatedly appeared ready, and willing, for the various scheduled proceedings." Although another judge might have

---

[9] We note that, while the State acknowledges that it had some difficulty in providing discovery materials to Buckner, it contends that it nevertheless acted in good faith with respect to discovery. But we see no reason why the discretion of the trial court to consider the difficulties with discovery as mitigation should be limited to difficulties that involve bad faith. Whether a defendant is stymied by innocent failures to produce discoverable materials or by bad faith suppression of evidence, he is stymied nonetheless. Here, the trial court found that the State's repeated discovery failings were "extremely concerning[,]" but it never concluded that the State acted in bad faith. Instead, the trial court merely found that the State's failure to timely provide the discovery materials it had promised, without regard to its intent, served to "somewhat mitigate[ ]" the failure of Buckner to timely assert his right to a speedy trial. That was not unreasonable.

seen these circumstances differently, we cannot say that the trial court abused its discretion when it determined to weigh the third factor "heavily against [Buckner], but not as heavily as it would have if not mitigated by [his] insistence on his right to discovery."

(d) *The Fourth Factor: Prejudice.* As the United States Supreme Court has explained, prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect," namely "to prevent oppressive pretrial incarceration," "to minimize anxiety and concern of the accused," and "to limit the possibility that the defense will be impaired." *Barker*, 407 U. S. at 532 (IV). See also *Doggett*, 505 U. S. at 654 (III) (A); *Pickett*, 288 Ga. at 677 (2) (c) (4). Of these interests, an injury to the last is the most serious, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U. S. at 532 (IV). That is just the sort of injury that Buckner claims in this case, asserting that a 2003 investigation of evidence tampering in his case revealed that two police officers and a retired police officer — who were friends of the family of the victim — were invited by the family into Ashleigh's bedroom before it was secured by the assigned investigating officers, that at least one of these officers tampered with evidence — including by removing potential evidence from the bedroom — and that one of the officers told the family members not to tell anyone that they had entered Ashleigh's bedroom before it had been secured by the proper authorities.[10]

The trial court found that the evidence supported Buckner's claims about tampering with evidence. It also found that the officer who investigated the evidence tampering in 2003 was no longer able to recall important and material details of his investigation, that recordings of witnesses to the tampering had been lost by the State, and that those witnesses either were now deceased or unable to recall important details about who had been in Ashleigh's unsecured bedroom and what they had done there. This evidence supports the finding of the trial court that Buckner was not able "to sufficiently explore what pieces of evidence at the crime scene were altered or manipulated." As a result, the trial court concluded, Buckner "was in the unique position of not just speculating, but knowing, that there was tampering with the evidence at the . . . crime scene, but being prevented from identifying and showing what aspects of the scene,

---

[10] Buckner also claims that he was actually prejudiced by the destruction of physical evidence, including hairs found on Ashleigh's body, but the trial court explicitly declined to find actual prejudice in connection with that claim, and we need not consider this claim further.

and what specific pieces of evidence, have been altered or manipulated."[11] These findings do not appear clearly erroneous, and we cannot say that the trial court abused its discretion when it concluded that Buckner suffered actual prejudice as a result of his inability to show the extent to which the tampering occurred. See *Barker*, 407 U. S. at 532 (IV) ("If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past.").

(e) *Balancing the Factors.* Finally, we must review the way in which the trial court balanced the four *Barker-Doggett* factors. The trial court concluded that, although Buckner's late assertion of his right to a speedy trial "weighs significantly" against him, the other factors all weigh against the State, and on balance, the relevant factors indicated that Buckner had been denied his right to a speedy trial. Perhaps some other judge might have balanced the factors differently, but that is not the standard of appellate review. The balancing undertaken by the trial court was reasoned and reasonable — especially in light of its findings of actual prejudice — and for that reason, we cannot say that it amounts to an abuse of discretion. See *State v. Lattimore*, 287 Ga. 505, 507 (696 SE2d 613) (2010). There are some things about which reasonable people can reasonably disagree, and under settled Georgia law, when reasonable people could reasonably disagree about the weighing and balancing of the *Barker-Doggett* factors, we must defer to the judgment of the trial court. This is such a case. Accordingly, we must affirm the decision below.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 4, 2013.

*Larry Chisolm, District Attorney, Diane M. McLeod, David E. Perry, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

---

[11] Moreover, unlike *Gleaton*, 288 Ga. at 377, where we affirmed a trial court finding of actual prejudice based upon the destruction of evidence even though the defendant at least arguably had an opportunity to investigate the crime scene independently before the destruction occurred, see id. at 377-378 (Melton, J., dissenting), we cannot say that Buckner had such an opportunity. Buckner was incarcerated on other charges and was not indicted for any crimes related to Ashleigh until December 2007, long after the tampering occurred and was investigated.

*Amy L. Ihrig, Jason R. Clark, Newell M. Hamilton, Jr.,* for appellee.