**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**July 20, 2022**

# In the Court of Appeals of Georgia

A22A0931. THE STATE v. ADAMS.

PHIPPS, Senior Appellate Judge.

In this prosecution for driving under the influence and an open container violation, the State appeals from the state court's order granting defendant Terrance Adams's[1] plea in bar and motion to dismiss due to a violation of his right to a speedy trial as guaranteed by the federal and state constitutions. The State contends on appeal that the state court made several factual errors and improperly weighed the pertinent factors in finding a speedy trial violation. Because the state court's analysis was incomplete, we vacate its order and remand this case to the state court for further proceedings consistent with this opinion.

---

[1] Adams's first name also is spelled "Terrence" and "Terence" in the record.

The record shows that Adams was arrested on March 18, 2018, and subsequently released on bond. During an October 2018 municipal court hearing, the State moved to bind the case over to state court. Adams objected and requested a bench trial in municipal court, citing concerns over excessive delays when cases are bound over to state court, and highlighting that his case already had experienced a "really long delay" due to a "computer issue."[2] On October 26, 2018, the municipal court granted the State's motion and bound the case over to state court, and the State filed an accusation in state court on May 13, 2019. In the interim, Adams had moved, but there was no pending case in which his address could be updated with the state court clerk until after the accusation was filed. When Adams did not appear for his arraignment in August 2019, a bench warrant was issued for his arrest. He subsequently was arrested in early February 2020, at which time he was required to post bond a second time in the amount of $400. Adams filed his plea in bar and motion to dismiss on February 18, 2020. The state court granted the motion and dismissed the charges against Adams on December 16, 2021. This appeal followed.

---

[2] According to the State, the "computer issue" was a "ransomware attack" in which "the City of Atlanta's systems were hacked for a substantial period of time."

The United States and Georgia Constitutions both guarantee a criminal defendant the right to a speedy trial. U. S. Const. amend. VI; Ga. Const. of 1983, Art. I, Sec. I, Par. XI (a). The test for determining whether the constitutional right to a speedy trial has been violated is set forth in *Barker v. Wingo*, 407 U. S. 514, 530-533 (IV) (92 SCt 2182, 33 LE2d 101) (1972), and clarified further in *Doggett v. United States*, 505 U. S. 647, 651-658 (II)-(III) (112 SCt 2686, 120 LE2d 520) (1992).

> In considering a defendant's claim that he was denied his constitutional right to a speedy trial, the trial court is required to decide as a threshold matter whether the delay at issue was long enough to create "presumptive prejudice." If the delay was not long enough to create presumptive prejudice, the speedy trial claim fails at the threshold. A delay long enough to be presumptively prejudicial triggers a requirement that the trial court analyze the speedy trial claim by balancing the conduct of the state and the defendant under four factors set forth in *Barker*[, 407 U. S. 514]: (1) whether the delay before trial was uncommonly long; (2) whether the state or the defendant is more to blame for the delay; (3) whether, in due course, the defendant asserted the right to a speedy trial; and (4) whether the defendant suffered prejudice as a result of the delay.

*Goffaux v. State*, 313 Ga. App. 428, 428-429 (721 SE2d 635) (2011) (citations omitted); see also *Barker*, 407 U. S. at 530-533 (IV); *State v. Porter*, 288 Ga. 524,

3

525-526 (2) (a) (705 SE2d 636) (2011). Thus, "after making a threshold determination that the delay was long enough to create presumptive prejudice, the trial court must consider the delay a second time as part of the prejudice factor of the four-factor *Barker* analysis." *Goffaux*, 313 Ga. App. at 429.

"In reviewing the trial court's ruling on appeal, no single factor is necessary or sufficient to sustain a speedy trial claim, and we afford deference to the trial court's findings of fact and weighing of disputed facts. We review the trial court's ruling for abuse of discretion." *Goffaux*, 313 Ga. App. at 429 (citations and punctuation omitted). Nevertheless, "the trial court's order must provide sufficient findings of fact and conclusions of law to permit [an appellate court] to determine if the trial court properly exercised its discretion under the *Barker* analysis." *Porter*, 288 Ga. at 526 (2) (a). "Absent such findings, there is no exercise of discretion for this Court to review, and the trial court's order must be vacated and the case remanded for the entry of a proper order pursuant to *Barker*." Id. at 533 (2) (e) (citation and punctuation omitted); see *Higgenbottom v. State*, 288 Ga. 429, 431 (704 SE2d 786) (2011) (observing that a trial court order must contain findings of fact and conclusions of law as to each *Barker* factor and vacating an order denying a

4

constitutional speedy trial claim on the ground that "the limited findings made by the trial court [were] insufficient to provide for proper appellate review").

Here, the State challenges the state court's rulings at several steps of the analysis. We address each step in turn.

1. *The Threshold Inquiry: Presumptive Prejudice.* "The right to a speedy trial attaches at the time of arrest or formal accusation or indictment, whichever occurs first, and the courts measure the delay from the time the right attaches." *State v. Buckner*, 292 Ga. 390, 393 (2) (738 SE2d 65) (2013). Where, as here, a trial has not occurred, "the delay should be calculated from the date of arrest or other formal accusation to the date on which a defendant's speedy trial motion was granted or denied." *Labbee v. State*, 362 Ga. App. 558, 562 (1) (869 SE2d 520) (2022) (citation and punctuation omitted); see *Buckner*, 292 Ga. at 393 (2) (measuring delay from indictment to grant of motion to dismiss); *State v. Johnson*, 291 Ga. 863, 864 (1) (734 SE2d 12) (2012) (same).

In this case, 45 months passed between Adams's initial arrest on March 18, 2018, and the dismissal of the charges against him on December 16, 2021. "A one-year delay is typically presumed to be prejudicial." *Labbee*, 362 Ga. App. at 562 (1) (citation and punctuation omitted); accord *Porter*, 288 Ga. at 526-527 (2) (b)

5

(delay of more than one year from arrest to disposition of speedy trial motion generally is presumptively prejudicial). The state court properly found that the delay in this case — a total of nearly four years — was presumptively prejudicial and triggered full analysis of the four *Barker-Doggett* factors.[3] See *Porter*, 288 Ga. at 526-527 (2) (b); *Labbee*, 362 Ga. App. at 562 (1). The State does not challenge this ruling on appeal.

2. *The Barker-Doggett Factors*.

(a) *Length of Delay*. "The first *Barker-Doggett* factor, whether the pretrial delay was uncommonly long, requires courts to analyze the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Labbee*, 362 Ga. App. at 562 (2) (a) (citation and punctuation omitted). "[T]he delay that can be tolerated in a particular case depends to some extent on the complexity and seriousness of the charges in that case." *Buckner*, 292 Ga. at 393 (3) (a). Here, a pretrial delay of 45 months (33 months beyond the initial 12-month

---

[3] The state court excluded from its analysis 16 months of delay attributable to the statewide judicial emergency that was declared in response to the COVID-19 pandemic. While we include that time period in calculating the total delay, our ultimate conclusion as to presumptive prejudice is the same as the state court's. And while the state court also failed to account for an additional 12 months of total delay in its calculations, see Division 2 (b) (ii), below, that error does not change the presumptive prejudice analysis on the facts of this case.

6

presumptively prejudicial delay period) is significant — particularly in light of the non-complex charges at issue — and the state court properly weighed this factor against the State.[4] See *Ruffin v. State*, 284 Ga. 52, 57-59 (2) (b) (i) (663 SE2d 189) (2008) (pretrial delay of two years, three months, and two weeks in a murder case was "an exceptionally long time" and weighed against the State); *Fleming v. State*, 324 Ga. App. 481, 488 (3) (c) (ii) (749 SE2d 54) (2013) (29-month pretrial delay was "uncommonly long" and weighed against the State in a prosecution for battery and criminal damage to property); *Weems v. State*, 310 Ga. App. 590, 592 (2) (a) (714 SE2d 119) (2011) (40-month delay properly weighed against the State in a child molestation and sexual battery case); *Teasley v. State*, 307 Ga. App. 153, 158 (2) (a) (704 SE2d 248) (2010) (pretrial delay of three years and two months in a prosecution for cruelty to children weighed "heavily against the State").

(b) *Reasons for Delay*.

The second factor in the *Barker-Doggett* analysis requires the court to examine both the reason for the delay and whether this is attributable to the defendant or the State. To evaluate the reasons for

---

[4] While, as discussed above, the state court excluded several months from this calculation, its ultimate determination that "[t]his lengthy period of time is held against the State" is proper. See note 3, above. We address the State's contention that the state court improperly calculated the total delay in Division (2) (b) (ii), below.

delay, the court assigns various degrees of weight to the different reasons provided by the prosecution and the defense respectively. While a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government, an unintentional delay, such as that caused by the mere negligence of the prosecuting attorneys or the overcrowded docket of the trial court, should be weighted less heavily.

*Labbee*, 362 Ga. App. at 563 (2) (b) (citations and punctuation omitted); see *Porter*, 288 Ga. at 527 (2) (c) (2) (delay that is not deliberate, but rather results from negligence and workloads, weighs only lightly against the State). "Of course, delay caused by the defense weighs against the defendant." *Labbee*, 362 Ga. App. at 563 (2) (b) (citation and punctuation omitted).

(i) *Delay Caused by the Pandemic-Related Suspension of Jury Trials.* "On March 14, 2020, . . . citing the public health emergency presented by the COVID-19 pandemic, Supreme Court of Georgia Chief Justice Harold Melton issued an order declaring a statewide judicial emergency." *Copeland v. Copeland*, 361 Ga. App. 125, 127, n. 3 (863 SE2d 509) (2021). "The judicial emergency order, among other things, suspended jury trials that had not yet commenced" and "thereafter was extended several times with modifications." *Labbee*, 362 Ga. App. at 560. The order expired

8

on June 30, 2021. See https://www.gasupreme.us/wp-content/uploads/2021/06/15th-SJEO_as-issued.pdf (June 7, 2021).

We agree with the State that the delay of just under 16 months attributable to the statewide judicial emergency is not weighed against either party. See *Labbee*, 362 Ga. App. at 566-567 (2) (b) (iv). The state court essentially reached this proper conclusion when it excluded that time period from all of its calculations.

(ii) *Delays Caused by the State and by Adams.* The state court determined that the delay of 17 months between Adams's March 2018 arrest and scheduled arraignment in August 2019 was attributable to the State. Of course, the delay that resulted from the State's decision to move to bind the case over to the state court is properly weighed against the State. And the state court noted in its order that the State provided no other reason for the length of that delay "other than to generally reference the high volume of cases that the Solicitor General's office chooses to prosecute." While we find no fault in that determination as far as it goes, see *Ruffin*, 284 Ga. at 61 (2) (b) (ii) (observing that, "where no reason appears for a delay, we must treat the delay as caused by the negligence of the State in bringing the case to trial" and that, in applying the *Barker-Doggett* balancing test, "the 'government'

includes all state actors, even trial and appellate court judges") (citations and punctuation omitted), we agree with the State that it is incomplete.

As discussed above, the total delay in this case (as of the date of the order on appeal) encompasses 45 months. In its order, the state court accounts for only 33 months: the 17 months from Adams's arrest to his scheduled arraignment and the 16 months attributable to the judicial emergency.[5] The court's order thus fails to account for (a) the seven months between Adams's scheduled arraignment and the beginning of the judicial emergency and (b) the slightly more than five months between the end of the judicial emergency and the entry of the state court's order. In that vein, as noted by the State, the state court similarly failed to address whether either of those delays should be weighed against either party. And as also noted by the State, the state court neither identified the weight to be assigned to those delays nor made any factual findings in support thereof. Absent the required findings on these issues, we must vacate the state court's order and remand the case for the state court to complete the

---

[5] As noted by the State (and discussed above), the state court should have included the judicial emergency when it calculated the total delay (and weighed that time period against neither party), rather than simply excluding it from the calculation. See *Labbee*, 362 Ga. App. at 562-563 (1)-(2) (a), 565 (2) (b) (iv).

necessary analysis.[6] See *Johnson*, 291 Ga. at 868 (3) (concluding that the trial court had erred in its consideration of the *Barker-Doggett* factors and remanding "for the trial court to correctly apply the pertinent legal principles" and reconsider the defendant's speedy trial claim); *Porter*, 288 Ga. at 534 (2) (e) (holding that "the trial court could not properly balance the *Barker* factors" due to errors and omissions in its speedy trial analysis, which required a remand for the court "to exercise its discretion again using properly supported factual findings and the correct legal analysis, reflected in an adequate written order"). Nevertheless, because the state court addressed the remaining steps of the *Barker-Doggett* framework — which necessarily must be a part of the analysis on remand — we address them here.

---

[6] Because the state court made no findings as to whether the delay between Adams's scheduled arraignment and his subsequent arrest should be weighed against either party, we express no opinion on the State's contention that this time period should be moderately or heavily weighed against Adams but rather leave that determination for the state court to address on remand. And we likewise decline the State's invitation to engage in any additional required fact-finding in the first instance. See *Buckner*, 292 Ga. at 391 & n. 3 (observing that the role of an appellate court "is a limited one," that "the weighing of the relevant factors identified in *Barker* and *Doggett* is a matter committed to the discretion of trial judges," and that it therefore "is not the job of an appellate court to weigh the *Barker-Doggett* factors in the first instance") (citation and punctuation omitted); accord *Porter*, 288 Ga. at 527 (2) (c) (2) ("[T]he Court of Appeals should not have made . . . findings and weighed the results in the first instance.").

(c) *Assertion of the Right to a Speedy Trial.* "The third *Barker-Doggett* factor requires courts to analyze whether the defendant timely asserted his constitutional right to a speedy trial." *Labbee*, 362 Ga. App. at 568 (2) (c) (citation and punctuation omitted).

> Though the State bears the burden to ensure that an accused is brought to trial promptly, the accused bears some responsibility to invoke the speedy trial right and put the government on notice that he would prefer to be tried as soon as possible. Once the right to a speedy trial attaches, the accused must assert it with reasonable promptness, and delay in doing so normally will be weighed against him. That said, the accused is not required to demand a speedy trial at the first available opportunity, only to demand it in due course. To assess whether the accused insisted in due course upon his right to a speedy trial requires a close examination of the procedural history of the case with particular attention to the timing, form, and vigor of the accused's demands to be tried immediately.

*Buckner*, 292 Ga. at 396-397 (3) (c) (citations and punctuation omitted).

(i) In its dismissal order, the state court highlighted that Adams first voiced concerns regarding a timely resolution of the charges against him when he sought a bench trial in the municipal court and objected to the State's motion to bind the case over to state court. That finding — as far as it goes — is supported by the record. Cf.

12

*Ruffin*, 284 Ga. at 63 (2) (b) (iii) (observing that the defendant "asserted his speedy trial right . . . when he appeared in court on the first specially set trial date with his witnesses and exhibits and requested severance of his case from his co-defendant's so that he could proceed to trial immediately").

The State, however, contends that the state court should have measured the delay between Adams's initial arrest in March 2018 and the February 2020 filing of his plea in bar and motion to dismiss in determining the timeliness of his assertion of his right to a speedy trial. We find no abuse of discretion by the state court in this regard on the particular factual and procedural scenario presented here. As the state court noted, Adams made early efforts to protect his right to a speedy trial by seeking a bench trial in the municipal court, but was thwarted by the State's motion to bind the case over to state court. And the record supports the state court's finding that Adams ultimately filed his plea in bar and motion to dismiss within a week of when he first learned of the existence of the state court proceedings.

(ii) That, however, does not end the analysis. The state court also found that, given Adams's change of address between the magistrate court's October 2018 grant of the State's motion to bind the case over to the state court and the May 2019 accusation filed in state court, neither Adams nor his attorney received timely notice

13

of the pending state court proceedings. Consequently, the court found, Adams first learned of the state court proceedings when he was arrested in early February 2020, and he filed his plea in bar and motion to dismiss in the state court within a week of that arrest.[7] While these findings also are supported by the record, they again are incomplete. In particular, the state court did not address whether — and, if so, to what extent — Adams's failure to update his address with the state court after his accusation was filed should factor into the timeliness of his assertion of his speedy trial rights. To the extent that additional evidence may be required in this respect, the state court should give the parties the opportunity to present such evidence on remand. And to the extent that the state court may wish to take judicial notice of its clerk's office's practices and procedures related to a party's ability to update his address, it should clearly state so in any order it enters on remand. See generally OCGA § 24-2-201.

(iii) While the State maintains that Adams's failure to seek a timely ruling on his plea in bar and motion to dismiss after it was filed weighs against him, the state court made no findings one way or another on that issue. The state court therefore

_____

[7] Adams's counsel first filed a notice of appearance in state court on February 11, 2020. According to Adams's counsel, arraignment notices are sent only to defendants and not to counsel.

14

should address this contention on remand. See *Buckner*, 292 Ga. at 391 & n. 3; *Porter*, 288 Ga. at 527 (2) (c) (2).

> (d) *Prejudice.*
>
> The fourth *Barker-Doggett* factor requires courts to consider three interests: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the defendant, and limiting the possibility that the defense will be impaired. Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Labbee*, 362 Ga. App. at 570 (2) (d) (citations and punctuation omitted).

During the hearing on Adams's plea in bar and motion to dismiss, he testified that he had been scheduled to start a new job either the day of or the day after his February 2020 arrest. Because of the arrest, he missed his first day of work, for which he was "written up." According to Adams, missing the first day of his job was the "catalyst" for his termination approximately one month later, and he suffered embarrassment as a result of the episode.

In its dismissal order, the state court found that Adams suffered prejudice in three ways: (i) he was re-arrested in February 2020; (ii) he had to pay $400 to obtain a new bond at that time; and (iii) he suffered "anxiety and stress about missing work."

15

Given Adams's testimony above, these findings — again, as far as they go — are supported by the record. The State, however, disagrees, contending that: (i) Adams's February 2020 arrest resulted from his own failure to keep his address updated with the state court; (ii) the record does not show that he was fired because of his February 2020 arrest; and (iii) the record likewise does not show any prejudice between his initial March 2018 arrest and subsequent February 2020 arrest.

On the peculiar facts of this case, the extent to which Adams's re-arrest in February 2020 properly may be viewed as prejudicial under the *Barker-Doggett* analysis depends, at least in part, on the extent to which the blame for that arrest lies with Adams, the State, or both. And that determination depends, at least in part, on the extent to which the blame for Adams's failure to update his address with the state court after his accusation was filed lies with Adams, the State, or both, taking into account all of the circumstances, including the nearly seven-month delay between the municipal court's grant of the State's motion to bind the case over to state court and the State's filing of the accusation in the state court. Consequently, absent findings on each of these issues, the state court's prejudice analysis is premature.[8]

---

[8] The State's claim that Adams was not fired because of his February 2020 arrest should be directed to the state court on remand, as the state court made no finding one way or another on that issue.

Finally, the state court also should address on remand the State's claims that no prejudice is attributable to the time between Adams's initial March 2018 arrest and his subsequent February 2020 arrest and that the delays in this case have not impaired Adams's ability to prepare a defense. See *Labbee*, 362 Ga. App. at 570 (2) (d) (the most serious interest in assessing prejudice is "limiting the possibility that the defense will be impaired"); id. at 570-571 (2) (d) (explaining that "courts must consider the length of the delay in assessing prejudice" and that "[o]nce the threshold of presumptive prejudice is satisfied," the presumption always applies, "although it increases in weight over time") (citations and punctuation omitted). Here, because the state court did not properly calculate the total amount of delay, see Division 2 (b) (ii), above, it necessarily did not address the extent to which the full length of the delay factored into the prejudice analysis. It should do so on remand. See *Labbee*, 362 Ga. App. at 570-571 (2) (d); *Goffaux*, 313 Ga. App. at 429; see also generally *Ruffin*, 284 Ga. at 65 (2) (b) (iv) ("[C]onsideration of prejudice is not limited to the specifically demonstrable, and affirmative proof of particularized prejudice is not essential to every speedy trial claim.") (citation and punctuation omitted).

(e) *Balancing the Factors.* Given the state court's failures to properly calculate and account for all times encompassed by the total delay and to determine and clearly

17

identify the relative weight to be attributed to each of the individual factors that led to delays in this case, see Divisions 2 (b) (ii), (c), and (d), above, the court necessarily did not properly balance all of the relevant factors. This step of the analysis thus provides nothing for us to review — as a result of which we do not address the State's arguments regarding the proper weighing and balancing of each relevant factor at this time — and the state court should address this part of the balancing test anew on remand. See *Buckner*, 292 Ga. at 393 (3) (a court must weigh all of the relevant factors, "along with any other relevant circumstances, in a difficult and sensitive balancing process") (citation and punctuation omitted); *Porter*, 288 Ga. at 534 (2) (e) (holding that the trial court could not properly balance the *Barker* factors because it made no factual findings as to one factor and failed to address the reasons for eight years of delay, and remanding for the trial court to "exercise its discretion again using properly supported factual findings and the correct legal analysis, reflected in an adequate written order").

Accordingly, the [state] court's order must be vacated and the case remanded for the [state] court to exercise its discretion again using properly supported factual findings and the correct legal analysis, reflected in an adequate written order. In conclusion, we note that the speedy trial clock is still ticking, and the [state] court's analysis on remand should take into account that the length of the pretrial delay

18

continues to run until entry of a [second] written order applying the *Barker-Doggett* framework.

*Richardson v. State*, 318 Ga. App. 155, 164 (2) (e) (733 SE2d 444) (2012) (citations and punctuation omitted); see also id. at 158 (1).

*Judgment vacated and case remanded with direction. Doyle, P. J., and Reese, J., concur.*